RECORD NO. No. 14-1618

# In The
# United States Court of Appeals
## For The Fourth Circuit

### TIMOTHY REDMOND; COLLEEN REDMOND,

*Plaintiffs-Appellants,*

v.

### GREEN TREE SERVICING, LLC,

*Defendant-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA**

_____

**BRIEF OF APPELLANTS**
_____

**Aaron D. Radbil**
**GREENWALD DAVIDSON PLLC**
**5550 Glades Road, Suite 500**
**Boca Raton, Florida 33431**
**561-826-5477**

*Counsel for Appellants*

# Table of Contents

Table of Authorities..................................................................................................ii

Statement of Jurisdiction.......................................................................................... 1

Statement of Issues................................................................................................... 1

Statement of the Case............................................................................................... 2

Summary of the Argument........................................................................................ 3

Argument................................................................................................................... 4

      I.      This Court must review the district court's order granting Green
             Tree's motion for summary judgment de novo....................................4

      II.     The NCDCA allows "any person" affected by conduct that it
             proscribes to bring a private cause of action. It does not limit
             standing to "consumers." ...................................................................5

      III.    Notwithstanding, if the NCDCA applies only to consumers—it
             does not—the Redmonds are consumers as defined by the
             statute. ...............................................................................................8

Conclusion............................................................................................................... 16

Certificate of Compliance........................................................................................17

Certificate of Filing and Service..............................................................................18

# Table of Authorities

## Cases

*Baker v. G.C. Servs. Corp.*,
　　677 F.2d 775 (9th Cir. 1982)....................................................................8, 10

*Belin v. Litton Loan Servicing, LP*,
　　No. 8:06CV760 T24EAJ, 2006 WL 1992410 (M.D. Fla. 2006)....................8

*Bradley v. Richmond School Board*,
　　416 U.S. 696 (1974) .....................................................................................6

*DIRECTV, Inc. v. Cephas*,
　　294 F. Supp. 2d 760 (M.D.N.C. 2003)..........................................................8

*Fontenot v. Taser Int'l, Inc.*,
　　736 F.3d 318 (4th Cir. 2013)..........................................................................9

*Elay v. Evans*,
　　476 F. Supp. 2d 531 (E.D. Va. 2007)............................................................8

*Ensminger v. C. I. R.*,
　　610 F.2d 189 (4th Cir. 1979)..........................................................................6

*Khatib v. Cnty. of Orange*,
　　639 F.3d 898 (9th Cir. 2011).......................................................................6-7

*Liu v. Arrow Fin. Servs., LLC*,
　　No. H-08-3116, 2010 WL 1994190 (S.D. Tex. 2010)..................................7-8

*McCartney v. First City Bank*,
　　970 F.2d 45 (5th Cir. 1992).........................................................................10

*McDermott v. Randall S. Miller & Associates, P.C.*,
　　835 F. Supp. 2d 362 (E.D. Mich. 2011).......................................................16

*McWirther v. Telecheck Servs., Inc.*,
　　No. 3:99CV216MU, 1999 WL 33261239 (W.D.N.C. Dec. 1, 1999)..............7

*Meadows v. Franklin Collection Servs., Inc.*,
    414 Fed. Appx. 230 (11th Cir. 2011)............................................................. 10

*Miller v. Fed. Deposit Ins. Corp.*,
    906 F.2d 972 (4th Cir. 1990)......................................................................... 4

*Montgomery v. Huntington Bank*,
    346 F.3d 693 (6th Cir. 2003).......................................................................... 7

*Porter v. Block*,
    156 F.2d 264 (4th Cir. 1946).......................................................................... 6

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*,
    673 F.3d 294 (4th Cir. 2012)......................................................................... 4

*Redmond v. Green Tree Servicing, LLC*,
    941 F. Supp. 2d 694 (E.D.N.C. 2013)..................................................... 10, 16

*Reid v. Ayers*,
    138 N.C. App. 261 (2000)........................................................................ 5, 7

*Riveria v. MAB Collections, Inc.*,
    682 F. Supp. 174 (W.D.N.Y. 1988)............................................................... 7

*Schroyer v. Frankel*,
    197 F.3d 1170 (6th Cir. 1999)..................................................................... 10

*Thompson v. Murray*,
    924 F.2d 1053 (4th Cir. 1991)....................................................................... 6

*Whatley v. Universal Collection Bureau Inc. (Florida)*,
    525 F. Supp. 1204 (N.D. Ga. 1981).............................................................. 7

*Wilkes Nat. Bank v. Halvorsen*,
    126 N.C. App. 179 (1997).............................................................................. 9

**Statutes**

15 U.S.C. § 1692.............................................................................................. 7

28 U.S.C. § 1291.................................................................................1

28 U.S.C. § 1331.................................................................................1

28 U.S.C. § 1367(a)............................................................................1

47 U.S.C. § 227..................................................................................1

N.C. Gen. Stat. § 75-1.1......................................................................5

N.C. Gen. Stat. § 75-50(1)...................................................................8

N.C. Gen. Stat. § 75-50(2)...................................................................9

N.C. Gen. Stat. § 75-56........................................................................5

N.C. Gen. Stat. § 75-56(b)....................................................................5

## Other Authorities

2009 North Carolina Laws S.L. 2009-573 (S.B. 974)..............................5

*Reminiscences of Abraham Lincoln by distinguished men of his time / collected and edited by Allen Thorndike Rice* (1853-1889). New York: Harper & Brothers Publishers, 1909. ...................................................14

## Statement of Jurisdiction

The appellants in this case are Timothy and Colleen Redmond. The appellee is Green Tree Servicing, LLC ("Green Tree").

The United States District Court for the Eastern District of North Carolina had jurisdiction over this matter under 47 U.S.C. § 227, 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a). The Honorable Terrence W. Boyle was the presiding judge.

The district court entered an order granting Green Tree's motion for summary judgment, *see* Order Granting Green Tree's Motion for Summary Judgment, District Court Document 47, and subsequently entered final judgment in Green Tree's favor. *See* Final Judgment, District Court Document 49. The district court later denied the Redmonds' motion to reconsider its order granting Green Tree's motion for summary judgment. *See* Order Denying the Redmond's Motion to Reconsider, District Court Document 54. The Redmonds then timely filed their notice of appeal. *See* Notice of Appeal, District Court Document 55.

This Court has jurisdiction over the Redmonds' appeal from the district court's final judgment—which disposed of all of the parties' claims—under 28 U.S.C. § 1291.

## Statement of Issues

1. The North Carolina Debt Collection Act ("NCDCA"), in relevant form, provides that "[a]ny debt collector who fails to comply with any provision of this Article *with respect to any person is liable to such person in a private action.*" It does not limit standing to consumers, as its pre-2009 form may

have. So did the district court err in holding that only consumers have standing to bring a claim under the post-2009 version of the NCDCA?

2. The NCDCA defines a "consumer" as "any natural person who has incurred a debt *or alleged debt* for personal, family, household or agricultural purposes." This means that a consumer is any person who owes a debt, *or who is alleged to owe a debt*. Here, Green Tree demanded that the Redmonds pay the subject debt. So did the district court err in finding that the Redmonds are not consumers as defined by the NCDCA?

## Statement of the Case

The Redmonds entered into an agreement to rent a home. *See* Transcript of Timothy Redmond's Deposition, District Court Document 36-1 at p. 15 (14:10-23). Sometime thereafter, they learned that the owner of the home had not been making mortgage payments, despite that the Redmonds had been making rental payments to her. *See* Letter from Homeowner to the Redmonds, District Court Document 33-4 at p. 136; Transcript of Timothy Redmond's Deposition, District Court Document 36-1 at p. 25 (24:3-11).

Consequently, and because Green Tree was unsuccessful in its efforts to collect the past due mortgage payments from the homeowner, Green Tree began attempting to collect them from the Redmonds. *See* Transcript of Timothy Redmond's Deposition, District Court Document 36-1 at p. 49 (48:23-24), and 36-2 at p. 49 (100:4-6); Transcript of Colleen Redmond's Deposition, District Court Document 41-1 at pp. 31 (30:4-21), 36-37 (35:20-25; 36:19-20), 40 (39:10-23); Transcript of Nick Lore's Deposition, District Court Document 39-1 at pp. 55

(54:12-13), 70-71 (69:20-25; 70:1-11); Green Tree's Debt Collection Notes,[1] District Court Document 42-1 at pp. 24-26; *see also* Plaintiff's Motion for Summary Judgment, District Court Document 34 at pp. 3-9.

In doing so, Green Tree violated the NCDCA. Accordingly, the Redmonds filed a lawsuit against Green Tree. *See* the Redmonds' Complaint, District Court Document 1. But after denying Green Tree's motion to dismiss the Redmonds' complaint, *see* Order Denying Green Tree's Motion to Dismiss, District Court Document 18, the district court ultimately granted Green Tree's motion for summary judgment. *See* Order Granting Green Tree's Motion for Summary Judgment, District Court Document 47.

Significantly, the district court did not find that Green Tree's debt collection conduct did not violate the NCDCA. Rather, it held that the Redmonds did not have standing to bring their claims against Green Tree because they were not consumers as defined by the NCDCA. *See id.* at pp. 4-8.

### Summary of the Argument

The NCDCA does not limit standing to consumers. Indeed, although its pre-2009 form may have included standing-based limitations, the North Carolina General Assembly's 2009 amendment to the NCDCA removed any limitation to

---

[1]    Notwithstanding the "CONFIDENTIAL" stamp found on Green Tree's notes, the Redmonds and Green Tree agreed to file a redacted version of Green Tree's notes, not under seal, before the district court.

standing that may have previously been associated with it. Specifically, effective October 1, 2009, "[a]ny debt collector who fails to comply with any provision of [the NCDCA] *with respect to any person is liable to such person in a private action*." This language was notably absent from the NCDCA's pre-2009 version. Therefore, even if the Redmond's are not consumers as defined by the statute—they are—they were entitled to proceed with their NCDCA claims against Green Tree.

Notwithstanding, if the NCDCA limits standing to consumers—it does not—the Redmonds are consumers as defined by the statute. In particular, a consumer under the NCDCA is any person who owes a debt, *or who is alleged to owe a debt*. And because Green Tree demanded that the Redmonds pay the subject debt, they are consumers as defined by the NCDCA. Accordingly, even if only consumers could bring claims under the NCDCA, the Redmonds had standing to pursue their claims against Green Tree.

## Argument

### I.  This Court must review the district court's order granting Green Tree's motion for summary judgment *de novo*.

This Court must review a "district court's grant of summary judgment de novo." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012). And in doing so, it must consider that "[s]ummary judgments are appropriate in those cases where there is no genuine dispute as to a material fact

and it appears that the moving party is entitled to a judgment as a matter of law." *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 973 (4th Cir. 1990).

## II. The NCDCA allows "any person" affected by conduct that it proscribes to bring a private cause of action. It does not limit standing to "consumers."

Prior to the North Carolina General Assembly's 2009 amendment to the NCDCA, the statute did not include any reference to a private right of action. *See* 2009 North Carolina Laws S.L. 2009-573 (S.B. 974). A plaintiff wishing to pursue a claim under the NCDCA, therefore, had to do so by way of a tie-in to North Carolina's Unfair and Deceptive Trade Practices Act. *See* N.C. Gen. Stat. Ann. § 75-56. ("The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article."). This means that a plaintiff bringing an action under the NCDCA not only had to state a claim under it, but also had to satisfy the Unfair and Deceptive Trade Practices Act's standing requirements. *Reid v. Ayers*, 138 N.C. App. 261, 265, 531 S.E.2d 231, 234 (2000).

But effective October 1, 2009, the General Assembly of North Carolina added to the NCDCA a provision that reads:

> Any debt collector who fails to comply with any provision of this Article *with respect to any person is liable to such person in a private action* in an amount equal to the sum of (i) any actual damage sustained by such person as a result of such failure and (ii) civil penalties the court may allow, but not less

than five hundred dollars ($500.00) nor greater than four thousand dollars ($4,000) for each violation.

N.C. Gen. Stat. Ann. § 75-56(b) (emphasis added).

So in its relevant form, the NCDCA permits "any person" aggrieved by a debt collector's conduct to bring an action for damages, without having to do so as a tie-in to the Unfair and Deceptive Trade Practices Act. Importantly, the NCDCA—unlike the Unfair and Deceptive Trade Practices Act—does not limit standing to any particular type of person.

Accordingly, and because "the court should not read into . . . statutes . . . provisions not inserted by legislative authority," *Porter v. Block*, 156 F.2d 264, 269 (4th Cir. 1946), this Court should reject the district court's judicial insertion of an unexpressed consumer-standing-based limitation into the NCDCA. Indeed, long-standing precedent compels as much. *See, e.g. Ensminger v. C. I. R.*, 610 F.2d 189, 191 (4th Cir. 1979) (declining to read in to a statute words that would limit its application); *Thompson v. Murray*, 924 F.2d 1053 (4th Cir. 1991) ("Courts cannot read into a statute something that is not within the manifest intention of the Legislature, as gathered from the statute itself.").

What's more, given that the North Carolina General Assembly, by way of its 2009 amendment to the NCDCA, took particular care to eliminate any limitation to standing previously associated with it, this Court should be particularly "reluctant to read into the statute the very . . . limitation that [the Legislature] eliminated."

*See Bradley v. Richmond School Board*, 416 U.S. 696, 716, n.23 (1974). And this is doubly true in light of the NCDCA's remedial nature. *See Khatib v. Cnty. of Orange*, 639 F.3d 898, 904 (9th Cir. 2011) ("[W]here Congress expressly instructs that provisions of a statute shall be construed liberally, we should not . . . read into the statute an unwritten additional hurdle, even if well intentioned.") (internal quotation omitted).

Also worth mentioning, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*—the federal statute on which the NCDCA is patterned, *McWirther v. Telecheck Servs., Inc.*, No. 3:99CV216MU, 1999 WL 33261239, at *3 (W.D.N.C. Dec. 1, 1999), and upon which North Carolina courts have relied in interpreting the NCDCA, *see, e.g., Reid v. Ayers*, 138 N.C. App. 261, 265 (2000)—does not limit standing to consumers. *See Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988) ("Recovery [under the FDCPA] is not limited to 'consumers' . . . . [Rather] [a]ny person who comes in contact with proscribed debt collection practices may bring a claim."); *Whatley v. Universal Collection Bureau Inc. (Florida)*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981) ("The liability section is couched in the broadest possible language; the statute is not limited to 'consumers.'").[2] This is significant, of course, because when interpreting

---

[2]     *See, e.g., Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003) ("By its express terms, § 1692d provides that '[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or

the NCDCA, courts "will look to federal courts that have considered the same question under the Federal Debt Collection Practices Act." *DIRECTV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 763 (M.D.N.C. 2003).

All things considered, therefore, while the NCDCA's pre-2009 form may have, by way of the procedural mechanism tying it to the Unfair and Deceptive Trade Practices Act, limited standing to consumers, the relevant version of the NCDCA does not. And because this is the case, the Redmonds were not precluded from bringing their claims under the NCDCA, even if they are not consumers as defined by the statute.

## III. Notwithstanding, if the NCDCA applies only to consumers—it does not—the Redmonds are consumers as defined by the statute.

The NCDCA defines a "consumer" as "any natural person who has incurred a debt *or alleged debt* for personal, family, household or agricultural purposes."

---

abuse *any person* in connection with the collection of a debt. We have interpreted this to mean that 'any person who has been harmed by a proscribed debt collection practice under § 1692d . . . [may] sue for damages under § 1692k(a)(2)(A).'"); *Liu v. Arrow Fin. Servs., LLC*, No. H-08-3116, 2010 WL 1994190, at *2 (S.D. Tex. 2010) ("Section 1692(k) states that 'any debt collector who fails to comply with any provision of [the Act] with respect to any person is liable to such person . . . .' A person who does not owe money but is subject to improper practices by a debt collector is covered by the statute.") (quoting *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)); *Elay v. Evans*, 476 F. Supp. 2d 531, 532-533 (E.D. Va. 2007) ("When read in conjunction with 15 U.S.C. § 1692k(a), this court construes §§ 1692e and 1692f to also mean that *any* aggrieved party may bring an action under the FDCPA."); *Belin v. Litton Loan Servicing, LP*, No. 8:06CV760 T24EAJ, 2006 WL 1992410, *6 (M.D. Fla. 2006) ("This court notes that Plaintiff's also assert claims for violations of § 1692d, which can be brought by any person, not just consumers.").

N.C. Gen. Stat. Ann. § 75-50(1) (emphasis added). In other words, a consumer is any person who owes a debt, *or who is alleged to owe a debt*.

An interpretation otherwise—that only a person who actually incurred a debt can be a consumer—would render superfluous a portion of the NCDCA's plain language; specifically, "or alleged debt." And courts should not interpret a statute in a manner that would render inoperative any word or phrase of its text. *See Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 327 (4th Cir. 2013).

As well, that a person alleged to owe a debt falls within the NCDCA's definition of a consumer is consistent with the statute's definition of a "debt"—which is "any obligation owed or due *or alleged to be owed or due from a consumer*." N.C. Gen. Stat. Ann. § 75-50(2) (emphasis added). Because if an obligation alleged to be owed by a consumer constitutes a debt, logic dictates that a consumer cannot be limited to a person that actually incurred an obligation.

Furthermore, public policy compels that a debt collector who violates one or more of the NCDCA's provisions, in connection with an attempt to collect an alleged debt from a person that does not actually owe it, should not be able escape liability under the statute. *Accord Wilkes Nat. Bank v. Halvorsen*, 126 N.C. App. 179, 183 (1997) ("The purpose of the Prohibited Acts by Debt Collectors Act is to create a general prohibition against deceptive or misleading representations."). Indeed, federal courts have noted as much in explaining that the NCDCA's federal

counterpart "holds debt collectors liable for various abusive, deceptive, and unfair debt collections practices *regardless of whether the debt is valid*." *Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) (emphasis added).

In fact, the district court, through its order denying Green Tree's motion to dismiss, adopted this very position:

> This Court also finds the FDCPA's legislative history and interpretations of that Act by other courts to be persuasive. Specifically, this Court finds that the stated congressional purpose for implementing the federal debt collection law included "eliminat[ing] the recurring problem of debt collectors dunning the wrong person." S.Rep. No. 95–382, at 4, 1977 U.S.C.C.A.N. 1695, 1699. Circuit courts have also noted Congress's motivation. *See e.g. Baker v. GC Serv. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (noting that a debtor has standing under the Act regardless of whether a valid debt exists and citing to the Congressional record.); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992); and *Meadows v. Franklin Collection Servs., Inc.*, 414 Fed.Appx. 230, 233 (11th Cir. 2011) (finding that the FDCPA is designed to protect "every individual, whether or not he owes the debt."). Moreover, the plain language of the statute references both *alleged* debts and *alleged* debtors. This language would be rendered superfluous if the court imposed on plaintiffs an additional requirement that they demonstrate they themselves actually incurred the debt.
>
> . . . . *As such, this Court finds that the NCDCA does extend to claims by individuals against whom a debt collector has made purposeful, targeted, and directed attempts to collect a debt alleged to be owed by the plaintiffs.*

*Redmond v. Green Tree Servicing, LLC*, 941 F. Supp. 2d 694, 698 (E.D.N.C. 2013) (emphasis added).

-10-

Importantly, in subsequently granting Green Tree's motion for summary judgment, the district court did not walk back its reasoning. *See* Order Granting Green Tree's Motion for Summary Judgment, District Court Document 47 at p. 7 ("Therefore the issue is whether or not plaintiffs have proffered enough evidence from which a reasonable jury could deduce that Green Tree was attempting to collect a debt from plaintiffs for which they were not liable."). Instead, it found that the Redmonds failed to present any evidence showing that Green Tree demanded payment of the subject debt from them. *See id.* at p. 8 ("In short, there is no evidence that Green Tree violated the NCDCA because plaintiffs have failed to show that Green Tree was ever attempting to collect a debt from them."). But the record demonstrates otherwise.

For instance, the record shows that one of Green Tree's representatives demanded that Ms. Redmond pay the balance of the subject debt:

> Q. Did they ask you to pay them any money?
>
> A. On several occasions.
>
> Q. When was the first time they asked you to pay money?
>
> A. I believe it was that same—not that phone call, but I believe it was the second time they had called me, which was the following day.
>
> Q. What did they say?
>
> A. They wanted us to pay our rent twice.

-11-

Q. What do you mean by that?

A. We had already paid Carolyn Dudley.

Q. And what was Green Tree asking you to pay?

A. Just the house payment for February. Well, January, because they said it was November, December, and January that wasn't paid.

Q. And so were they asking you to pay November, December, and January?

A. Yes, ma'am.

Transcript of Colleen Redmond's Deposition, District Court Document 41-1 at p. 31 (30:4-21).

It also demonstrates that one of Green Tree's representatives told Ms. Redmond that she "had to pay or get out":

Q. Were there further conversations with anyone from Green Tree?

A. A few times.

Q. Tell me about those conversations.

A. Some told me that, again, we had to pay or get out . . . .

*     *     *

A. They asked us at one point to pay $761, and I did not have the money to pay it.

*Id.* at pp. 36-37 (35:20-25; 36:19-20).

-12-

The record further evidences an additional conversation during which a Green Tree representative demanded that Ms. Redmond pay the subject debt:

> A. You know, it was pretty much the same thing. You need to get out, get out fast, move now, pay us or we're going to have to seek further action on this. The house was on wheels. It's a repossession, not an eviction. It was pretty much the same thing over and over.

*Id.* at p. 40 (39:10-23).

Similarly, the record outlines several conversations that Mr. Redmond had with Green Tree's representatives, during which they demanded that he pay the subject debt:

> A. You have to pay the account up to date. You have to get out now. We're coming to take pictures.
>
> \*      \*      \*
>
> A. They wanted money. The account was due again or past due. I can't remember which, and they wanted me to pay 'em.

Transcript of Timothy Redmond's Deposition, District Court Document 36-1 at p. 49 (48:23-24) and 36-2 at p. 49 (100:4-6).

Noteworthy, Defendant's designated corporate representative corroborated the Redmonds' testimony by acknowledging that "we were willing to forego repossessing the home if he was willing to make a monthly payment and keep the account current . . . ." Transcript of Nick Lore's Deposition, District Court

Document 39-1 at p. 55 (54:12-13).[3] And in similar fashion, Green Tree's debt

collection notes do the same. In particular, just after referencing a communication

that one of its representatives had with Mr. Redmond, Green Tree's debt collection

notes read:

> ADV HIM NEEDING TO GET THIS RESOLVE IF WNTING
> TO STAY IN HOME
>
> THAT IS FINE BUT NEED TO MKE PMT
>
> ADV HIM OF NOD AND LGL IF NOT RESOLVED
>
> SD HE UNDERSTANDS

Green Tree's Debt Collection Notes, District Court Document 42-1 at p. 25.

Several entries later Green Tree's debt collection notes state:

> THIS IS TAKEN CARE OF BUT FOR THEM TO STAY IN
> THE HOME FOR NOW WE NEED TO GET PMTS
>
> ADV HIM NEED TO GET $461.82
>
> SD THAT HE WILL MAKE MKE SOME CALLS AND CB
> THIS AFTERNOON

---

[3]     Green Tree's designated corporate representative did, however, take care to qualify his statement by explaining that Green Tree's attempt to "establish . . . . that [Mr. Redmond] was willing to make a monthly payment and keep the account current," did not mean that Green Tree was "trying to collect the debt from him." *Id*. (54:9-16). But Green Tree's self-serving characterization is reminiscent of a story that Abraham Lincoln once told about a boy who, when asked how many legs his calf would have if he called its tail a leg, replied, "Five," to which the prompt response was made that *calling* the tail a leg would not *make* it a leg. *Reminiscences of Abraham Lincoln by distinguished men of his time / collected and edited by Allen Thorndike Rice* (1853-1889), p.242. New York: Harper & Brothers Publishers, 1909.

*Id*. at p. 24.

Shortly thereafter, Green Tree's debt collection notes show:

TIM SD THAT HE IS NOT GOING TO GET PMTS IN

SD THAT HE ALREADY PD CAROLYN AND HE IS NOT
GOING TO PAY WHAT HE ALREADY PD TO HER

*Id*. at p. 24; *see also id*. at p. 26 (indicating "Refused Payment" just after referencing a conversation that one of Green Tree's representatives had with Ms. Redmond).

And in addition to all of this, the record shows that at the end of the day, Green Tree actually convinced the Redmonds to make a payment toward the subject debt. Specifically, Mr. Redmond had his sister pay, on his behalf, $692.73 toward the obligation that Green Tree demanded from the Redmonds. *See* Transcript of Nick Lore's Deposition, District Court Document 39-1 at pp. 70-71 (69:20-25; 70:1-8). Not surprisingly, Green Tree accepted the payment on the Redmonds' behalf. *See id.* at p. 71 (70:9-11).

So taken as a whole, the Redmonds' testimony, Green Tree's designated corporate representative's testimony, and Green Tree's debt collection notes, constitute evidence sufficient to demonstrate, for purposes of defeating a motion for summary judgment, that Green Tree "made purposeful, targeted, and directed

attempts to collect" the subject debt from the Redmonds. *See Redmond*, 941 F. Supp. 2d at 698. In fact, the record conclusively establishes as much.

Consequently, the Redmonds are consumers as defined by the NCDCA. And because this is true, even if the NCDCA, in relevant form, limits its protections to consumers—it does not—the Redmonds were entitled to proceed with their claims against Green Tree. *Accord McDermott v. Randall S. Miller & Associates, P.C.*, 835 F. Supp. 2d 362, 369 (E.D. Mich. 2011) (holding that the plaintiff had standing to pursue his FDCPA claims against a mortgage servicer who sent him a letter demanding payment of a mortgage debt that he did not owe).

## Conclusion

The district court erred in holding that the NCDCA limits standing to consumers. It also erred in finding that the Redmonds failed to present any evidence that Green Tree attempted to collect the subject debt from them. Consequently, the Redmonds were entitled to proceed with their NCDCA claims against Green Tree. Therefore, they respectfully request that this Court reverse the district court's order granting Green Tree's motion for summary judgment, and remand this matter to the district court for further proceedings.

## Certificate of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains [*3,913*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [  ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

   [  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: September 17, 2014                    /s/ Aaron D. Radbil_____
                                             *Counsel for Appellants*

## Certificate of Filing and Service

I hereby certify that on September 17, 2014, I caused this Brief of Appellants and Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Robert R. Marcus
Smith Moore Leatherwood LLP
101 N. Tryon Street
Suite 1300
Charlotte, NC 28246
rob.marcus@smithmoorelaw.com

Heather Conover White
Smith Moore Leatherwood LLP
101 N. Tryon Street
Suite 1300
Charlotte, NC 28246
heather.white@smithmoorelaw.com

*Counsel for Appellee*

I further certify that on September 17, 2014, I caused the required copies of the Brief of Appellants and Appendix to be hand filed with the Clerk of the Court, and to be served, via U.S. Mail, upon counsel for Appellee, at the above addresses.

/s/ Aaron D. Radbil_____
*Counsel for Appellants*